IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 06-00103-08-CR-W-ODS |
| ROBBIE BUNCH, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION
TO ACCEPT DEFENDANT'S GUILTY PLEA**

On August 14, 2006, I held a change-of-plea hearing after this case was referred to me by United States District Judge Ortrie Smith. I find that Defendant's plea was voluntary and therefore recommend that it be accepted.

## *I. BACKGROUND*

On March 15, 2006, an indictment was returned, charging Defendant with: (1) possession of forged checks, in violation of 18 U.S.C. § 513(a); and (2) credit card fraud, in violation of 18 U.S.C. § 1029(a)(5), via identity theft, in violation of 18 U.S.C. § 1028A. A change-of-plea hearing was held on August 14, 2006. Defendant was present, represented by appointed counsel Jeff Mullins. The government was represented by Assistant United States Attorney Kate Mahoney. The proceedings were recorded and a transcript of the hearing was filed on August 15, 2006.

## *II. AUTHORITY OF THE COURT*

The authority of federal magistrate judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and

the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. See Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991); Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of *de novo* review by a district judge preserves the structural guarantees of Article III. Torres, 258 F.3d at 795. Applying the Peretz holding and adopting the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. (quoting Williams, 23 F.3d at 633). Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796 (citing Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the key." Id. (quoting Williams, 23 F.3d at 633).

The Torres court also addressed the implications of such a delegation for Article III's case

and controversy clause. Id. Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a magistrate judge. Id. Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the magistrate judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the District Court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III. FINDINGS OF FACT

1. The parties consented to the delegation of the change of plea to the magistrate judge (Tr. at 2-3).

2. On March 15, 2006, an indictment was returned charging Defendant Bunch with (1) one count of knowingly making, uttering or possessing a forged security, namely checks on the account of APEX Property Solutions, an organization as defined in Title 18, United States Code, Section 513(a)(4), that is, a legal entity which operates and the activities of which affect interstate or foreign commerce, with the intent to deceive another person or organization, all in violation of Title 18 United States Code, Section 513(a); and (2) one count of knowingly and with the intent to defraud, effecting transactions with one or more access devices issued to another person or persons to receive payment or any other thing of value, during any one-year period, the aggregate value of which is equal to or greater than $1,000, in violation of Title 18, United States Code, Section 1029(a)(5), and during and in relation to said felony violation, knowingly transferred, possessed or used without lawful authority a means of identification of another person, in violation of Title 18, United States Code, Section 1028A(a)(1) (Tr. at 4-5). The court read the charges against Defendant

3

Case 4:06-cr-00103-ODS   Document 122   Filed 08/17/06   Page 3 of 8

and Defendant indicated that he understood the nature of these charges (Tr. at 4-5).

  3. The statutory penalty for the possession of forged checks is not more than ten years in prison, a fine of up to $250,000, a supervised release term of not more than 3 years, a $100 mandatory special assessment fee, and the potential for restitution (Tr. at 5-6). The statutory penalty for credit card fraud via identity theft is not more than fifteen years imprisonment plus a two-year minimum consecutive to any other sentence, a fine of up to $250,000, a supervised release term of not more than three years, a $100 mandatory special assessment fee, and the potential for restitution (Tr. at 6-7). Defendant was informed of the penalty ranges and indicated that he understood (Tr. at 6-7).

  4. Defendant was advised of the following:

   a. That he has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 7);

   b. That he has the right to assistance of counsel throughout the trial (Tr. at 8);

   c. That Defendant is presumed innocent, and the government has the burden of coming forward to prove Defendant's guilt beyond a reasonable doubt (Tr. at 7-8);

   d. That Defendant's attorney would have the opportunity to cross-examine the government's witnesses (Tr. at 8);

   e. That Defendant has the right to testify but does not have to, and that the jury could not make an adverse inference from the fact that Defendant may not testify at trial (Tr. at 8-10);

4

Case 4:06-cr-00103-ODS   Document 122   Filed 08/17/06   Page 4 of 8

   f. That Defendant has the right to subpoena witnesses to testify on his behalf (Tr. at 8); and

   g. That Defendant has the right to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 10-11).

 5. Defendant was informed and understood that by pleading guilty, he was giving up all of the rights described above (Tr. at 12).

 6. Defendant was informed that during the change-of-plea proceeding, he would be placed under oath and questioned by counsel and the judge (Tr. at 12). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 13). Defendant stated that he understood (Tr. at 12-13).

 7. Government counsel stated that this has been an open file case (Tr. at 13). If this case were to be tried, the government's evidence with regard to the charge for possession of forged checks would be that on May 12, 2005, fifteen business checks belonging to APEX Property Solutions, which were in the possession of a Pamela Baldwin, were stolen by Defendant (Tr. at 14). Defendant made the checks out to himself, forged the signature on the check, and cashed them at area banks between May 12, 2005, and August 23, 2005 (Tr. at 14). The total amount of those checks was $14,062.07 (Tr. at 14). Defendant was arrested, admitted to stealing and forging these checks, and said that he spent the money he gained from cashing the checks to buy methamphetamine from Christopher or Shane Dettlaff and Brandi Lasure in Lee's Summit, Missouri (Tr. at 14).

 Concerning the charge for credit card fraud via identity theft, the government's evidence would be that on September 8, 2005, a credit card belonging to Vickie Danahey was stolen while she

5

was attending a funeral (Tr. at 14). Defendant used this card at several locations including Side Pockets, CVS Pharmacy, Wal-Mart, Legs Nightclub and T-Mobile (Tr. at 14). The total amount charged to Ms. Danahey's credit card was $3,382.39, thus making the total amount over $1,000 in a one-year period (Tr. at 14). Ms. Danahey's name was used on the credit cards (Tr. at 14-15). All of these events took place in Jackson County in the Western District of Missouri (Tr. at 19).

8. Defense counsel stated that he had reviewed the government's file and confirmed from his own independent investigation that it was wise for his client to plead guilty (Tr. at 13).

9. Defendant admitted that from approximately May 12, 2005, through August 23, 2005, he had fifteen business checks from APEX Property Solutions, an entity operating in interstate or foreign commerce (Tr. at 15, 16). After he stole these checks, Defendant fraudulently made them out so he could cash them (Tr. at 15). The total amount involved was $14,062.07 (Tr. at 15-16). At the time of these acts, Defendant knew what he was doing was wrong but nonetheless did so knowingly and intentionally (Tr. at 16). Defendant intended to deceive APEX Property Solutions in order to get money from the checks (Tr. at 16).

Defendant further admitted that on September 8, 2005, he had a credit card that had been stolen from Ms. Danahey (Tr. at 16). Defendant used the credit card to gain access to $3,382.39 without the legal authority or consent from the actual owner of the card to do so (Tr. at 17). In order to obtain the funds, Defendant presented the credit card to bank employees and falsely and fraudulently represented that he was Ms. Danahey's family member (Tr. at 17-18). Based on this misrepresentation, the bank authorized the disbursement of funds (Tr. at 18). Defendant obtained such funds in order to buy methamphetamine from Christopher Dettlaff and Brandi Lasure (Tr. at 18).

10. Defendant was then placed under oath (Tr. at 19). He stated that he had provided honest, truthful answers to all of the questions posed to him regarding the factual basis for the two crimes with which he is charged (Tr. at 19). Defendant did not wish to change any of his testimony and felt he was guilty of the crimes as charged (Tr. at 19-20).

11. Defendant understood that there was not a plea agreement (Tr. at 20). No one had made any threats or any other promises in order to get Defendant to plead guilty (Tr. at 20).

12. Defendant is satisfied with the representation he has received from Mr. Mullins (Tr. at 20). There is nothing he has done that Defendant did not want him to do, and there is nothing he wanted him to do that he has not done (Tr. at 20-21).

13. Defendant is 30 years old (Tr. at 21). He received a high school education and completed some college (Tr. at 21). Defendant has no difficulty reading, writing and understanding English fairly well (Tr. at 21). Defendant has no mental health concerns that would prevent him from entering an intelligent and voluntary plea of guilty to these charges (Tr. at 21-22). Defendant was not under the influence of drugs or anything else that would cloud his ability to intelligently waive his right to a jury trial (Tr. at 22).

14. Defendant tendered a plea of guilty to the crime charged in Counts V and IX of the indictment (Tr. at 23).

### V. ELEMENTS OF THE CHARGED OFFENSE

The elements necessary to sustain a conviction for possession of forged checks include: (1) the defendant intended to deceive another person or organization; (2) the defendant possessed a counterfeit security; and (3) the organization whose security the defendant possessed operated in or affected interstate commerce. United States v. Henderson, 440 F.3d 453, 455 (8th Cir. 2006). To
7

sustain a conviction for credit card fraud via identity theft, the government must establish that a defendant: (1) knowingly and with the intent to defraud; (2) effected transactions with one or more access devices that were issued to another; (3) by means of identification of another person, use of which was without lawful authority; (4) to receive payment or anything of value during a one-year period; (4) the aggregate value of which is equal to or greater than $1,000.  See 18 U.S.C. §§ 1029(a)(5), 1028A(a)(1).

### *V. CONCLUSION*

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a magistrate judge for issuance of a report and recommendation on whether Defendant's guilty plea should be accepted.

2. Defendant has consented to having his plea taken by a magistrate judge.

3. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of the crime charged in Counts V and IX of this indictment.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting Defendant's guilty plea and adjudging Defendant guilty of the offense charged.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
August 16, 2006